CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 30 2014

JULIA C/DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID F. SPRINKLE, | ) | CASE NO. 7:13CV00267 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| M.D. ALI, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

David Sprinkle, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 while serving a criminal sentence of imprisonment.[1] Sprinkle alleges that while he was incarcerated at the Western Virginia Regional Jail ("the jail"), medical personnel provided inadequate treatment for his chronic pain, treated him differently than other inmates with pain issues, and interfered with and punished him for his attempts to use the jail grievance procedures, in violation of his constitutional rights. Upon review of the record, the court finds that the defendants are entitled to summary judgment as a matter of law as to Sprinkle's claims regarding his medical care and that their motions to dismiss must be granted as to his remaining claims.

## I. Background

Sprinkle sues Dr. Ali, the jail's physician; Head Nurse Buschor; and Captain Tuck, who oversees medical care for inmates at the jail. The doctor and nurse filed a motion to dismiss, Sprinkle responded, the defendants filed a reply and motion for summary judgment, and Sprinkle responded again. Capt. Tuck filed a motion to dismiss, supported with an affidavit and medical records, to which Sprinkle responded, making all defendants' motions ripe for disposition.

---

[1] After Sprinkle filed this civil action, he was released from incarceration.

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

Sprinkle suffers from polycystic kidney disease ("PKD"), an incurable genetic disorder in which non-cancerous, fluid-filled sacs, called cysts, form in the kidneys. Treatment of PKD patients is directed at managing complications associated with PKD, including back or abdominal pain; hypertension, also called high blood pressure; and hypertension-related headaches. Often pain associated with PKD can be managed with over-the-counter, non-narcotic pain medication.

Sprinkle arrived at the jail on December 27, 2012, as a pretrial detainee. During his medical intake interview, he told staff about his history of PKD, high blood pressure, and arthritis in his left ankle and other joints. Sprinkle reported that doctors in the past had prescribed Lortab and Percocet for his pain. The interviewer's notes indicate that Sprinkle did not report or appear to be in any pain at that time. Nurse Buschor advised Sprinkle that he would be placed on withdrawal from such opioid medications, because they were reserved for acute pain, while chronic pain was managed with non-opioid medications. Sprinkle stated that he did not want to undergo opioid withdrawal.[2] Dr. Ali states that because Sprinkle did not appear to be in pain while at the jail, the medical staff "had concerns that he was drug seeking." (Ali Affid. ¶5, ECF No. 26-2.)

Medical staff monitored Sprinkle's blood pressure and prescribed medications designed to keep it under control, although Sprinkle did not always comply with the doctor's directions

---

[2] Sprinkle alleges that the defendants told him repeatedly, "we will not treat your chronic pain" at the jail. (Compl. 3.) This characterization of the defendants' comments is not supported by Sprinkle's own submissions or by the undisputed medical records presented in support of defendants' motions. This record clearly reflects that the defendants treated Sprinkle for chronic pain, but did follow a general practice of not treating chronic pain with narcotics, such as Sprinkle had been prescribed in the past.

2

about medications. When Sprinkle complained of pain, staff provided him regularly with Tylenol. On January 3, 2013, Dr. Ali examined him and prescribed Tylenol and Mobic for pain. A few days later, on January 8, when Sprinkle complained about not receiving the pain medications he had requested, Nurse Buschor reviewed records from his treating physician and told him that he did not have a current prescription for narcotics.[3] He complained that since other inmates at the jail received narcotic pain medication, the jail staff should prescribe it for him as well.

Dr. Ali saw Sprinkle on January 10 and noted that he was sitting comfortably and in no distress. The doctor prescribed Neurontin and a higher dose of Tylenol at bedtime. When Sprinkle complained on January 16 about ankle pain, staff advised him to give the Neurontin a chance to take effect.

On January 18, Sprinkle complained of experiencing a "transient ischemic attach ("TIA") caused by his PKD and chronic pain. Staff noted that he walked to the medical department and climbed on the examination table without problems, was alert and oriented, and his speech, neurological, and strength exams were normal. His blood pressure was high and was treated with medication. Sprinkle began demanding his pain medication and asked the nurse to call his prior doctor. When she did so, she learned that at Sprinkle's last pre-incarceration appointment on November 12, 2012, his doctor had instructed Sprinkle to gradually reduce his use of his prescription medication for pain control. The doctor had also intended to help Sprinkle arrange

---

[3] Sprinkle's prior physician's records indicated that, at his last pre-incarceration examination on November 12, 2012, the doctor had discontinued Lortab and prescribed Percocet for 30 days with no refills.

3

for full time management of his care by a nephrologist. After this conversation, jail staff placed Sprinkle in "medical segregation" for observation[4] and arranged for him to see a specialist.

Dr. Ali examined Sprinkle again on January 24. Sprinkle told the doctor that he had stopped taking all of his medications because he did not know which one was causing his legs to swell. His blood pressure was high, and Dr. Ali changed his medication for that condition and released him into the general population.

Sprinkle saw a specialist, Dr. Ballenger, on January 29, 2013, for evaluation of his PKD. Dr. Ballenger recommended testing to rule out a brain aneurism, recommended a certain dose of Lortab every six hours as needed for pain, adjusted the blood pressure medication, and suggested a follow up exam in one month. Dr. Ali followed the specialist's plan and provided Sprinkle with the suggested narcotic pain medication, but at a smaller dose than the specialist recommended. The doctor told Sprinkle, "At no point since your arrival has medical seen you appear to be in any pain." (Compl. 4.) On March 4, 2013, Sprinkle filed a medical request for his Lortab to be reordered, but the medical staff advised him that he was "not approved to have [the medication] reordered."[5] (ECF No. 25-1, at p. 27.) Sprinkle was transferred to another jail on March 6, 2013.

The court construes Sprinkle's complaint as asserting the following claims under § 1983: (1) the defendants' policy of not treating chronic pain with narcotic medication deprived him of necessary treatment; (2) the defendants did not follow measures prescribed by plaintiff's prior treating doctors; (3) the defendants failed to request all relevant medical reports about plaintiff's prior treatment; (4) the defendants provided him with a different dose of narcotic pain

---

[4] According to Sprinkle, Captain Tuck told him that he was in medical segregation "for chronic pain and questionable TIA." (Compl. 4.)
[5] A note in Sprinkle's medical records dated February 26, 2013, states: "Per Heather Stevens, PA, patients Lortab will not be renewed." (Ali Affid. Attach. E, ECF No. 26-2, at 44.)

4

medication than the kidney specialist recommended and then allowed the prescription to run out; (5) the defendants unfairly refused to treat plaintiff's chronic pain with narcotic pain medication, although other inmates at the jail did receive such drugs; (6) Capt. Tuck denied plaintiff access to the grievance procedure by ruling his requests for certain medication to be "nongrievable" and by refusing to provide him with grievance forms eight times; and (7) the defendants placed plaintiff in medical segregation as punishment for filing grievances. Sprinkle seeks monetary damages for these alleged violations of his constitutional rights.

## II. Discussion

### A. Motions to Dismiss

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted). The court finds that the last three of Sprinkle's claims, without any reference to evidence outside the allegations of the complaint, cannot survive the defendants' motions to dismiss.

### 1. Different treatment

To prove a claim that prison officials have violated his rights under the Equal Protection Clause, an inmate "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). He must also show that such unequal treatment is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir.1989).

Sprinkle fails to forecast evidence that would demonstrate that he was treated differently than other inmates similarly situated. Sprinkle merely alleges that other jail inmates received narcotic medication. He fails to allege facts that would tend to show that these inmates suffered from chronic pain like his, rather than a temporary condition, such as a painful toothache or pain during recovery from surgery. He also fails to identify circumstances demonstrating that other inmates received narcotic medications at the jail that had been prescribed to them before their incarceration by doctors outside the jail staff. Sprinkle does not allege facts that would support the assertions that the difference in treatment stemmed from intentional discrimination against him. Indeed, he complains that the medical staff's refusal to provide narcotics for chronic pain was a blanket policy, applicable to all inmates as a general rule. Moreover, Sprinkle's treatment history indicates that the jail's medical staff made an exception to their policy when circumstances required, as reflected by their willingness to refer Sprinkle to the specialist and order the narcotics the specialist recommended. Because Sprinkle's complaint fails to present the necessary elements of an equal protection claim, the court will grant defendants' motions to dismiss as to Claim (5).

**2. Grievance procedure issues**

Inmates do not have a constitutionally protected right to participate in a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Thus, Captain Tuck's alleged noncompliance with the jail's grievance procedure, and her alleged interference with Sprinkle's ability to utilize that procedure, do not

support any claim actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Azeez v. De Robertis, 568 F. Supp. 8, 9-11 (N.D. Ill. 1982). Therefore, the court will grant the motions to dismiss as to Sprinkle's Claim (6).

Similarly, the Fourth Circuit has held that a prisoner's use of grievance procedures is not a protected First Amendment right. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (unpublished). As a result, allegations that officials have retaliated against inmates for filing grievance forms do not state cognizable claims for relief under § 1983. Adams, 40 F.3d 72, 75 (4th Cir. 1994) ("[C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution."). Thus, Sprinkle's conclusory assertion that Captain Tuck segregated him as punishment for his grievance filing does not implicate any constitutionally protected right[6] and accordingly, the court must grant the motions to dismiss as to Claim (7).

## B. Motions for Summary Judgment

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Id. at 249-50. "Conclusory or speculative allegations do not suffice, nor does

---

[6] "Moreover, bare assertions of retaliation do not establish a claim of constitutional dimension," without facts to support this inference. Adams, 40 F.3d at 74-75. Sprinkle alleges that while he was in medical segregation, jail officers told him, "You're f—ed. You messed with Captain Tuck." (MSJ Response 3, ECF No. 30.) Sprinkle contends that these statements prove his placement in medical segregation was punishment for his grievances. The record, however, includes no facts showing that officials segregated Sprinkle for filing the grievances, rather than for observation of the medical symptoms he had described in the grievances.

7

a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation and citation omitted).

When a motion for summary judgment is made and properly supported by affidavits and other documentation, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at 256-57. "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

The court has reviewed Sprinkle's claims about his course of medical treatment at the jail under the summary judgment standard of Rule 56, with reference to the medical records the defendants have submitted. Because Defendant Tuck's motion to dismiss Sprinkle's medical claims relies on records outside the plaintiff's pleadings, the court construes the motion as seeking summary judgment on those claims. Fed. R. Civ. P. 12(b)(6).

Punishments or prison conditions are "repugnant to the Eighth Amendment" if they . . . involve the unnecessary and wanton infliction of pain."[7] Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted). To demonstrate a claim for denial of medical care, a plaintiff must show that prison officials were deliberately indifferent to a serious medical need. Id. at 105. An official acts with deliberate indifference if he was aware of facts from which he could draw an inference that a substantial risk of harm existed, drew that inference, and

---

[7] It is not clear from his pleadings whether plaintiff was a pretrial detainee or a convicted felon at the time of the alleged violations. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs).

disregarded or responded unreasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff must also state facts showing that defendants' "actions or omissions [were] sufficiently harmful" and caused serious injury, or aggravation or deterioration of an existing medical condition. Estelle, 429 U.S. at 100-101 (finding proper the court's dismissal of inmate's claim of insufficient medical treatment, where inmate complained of pain not relieved by medical treatment provided); Staples v. Virginia Dep't of Corrections, 904 F. Supp. 487, 492 (E.D. Va. 1995) (dismissing § 1983 medical claim based on inmate plaintiff's failure to demonstrate "an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration"). Appropriate treatment for a medical need is "one of medical necessity" and "not simply that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir .1977).

Inadvertent failure to provide treatment, negligent diagnosis problems, and even medical malpractice do not present constitutional deprivations. Estelle, 429 U.S. at 105-106. A disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

**1. Dr. Ali and Nurse Buschor**

The court will assume, for purposes of this opinion, that Sprinkle's medical conditions, including pain associated with his PKD and arthritis, presented serious medical needs. The record indicates, however, that Dr. Ali and Nurse Buschor provided him treatment for his medical conditions, including his chronic pain, as they deemed appropriate in their professional judgment, based on the symptoms they observed during his stay at the jail. Thus, the court finds

no genuine dispute of material fact on which a fact finder could conclude that they were deliberately indifferent to Sprinkle's medical needs.

Sprinkle's claims all reflect his disagreement with various treatment decisions the defendants made: not treating chronic pain with narcotics, not treating his pain with the same medication previous doctors had prescribed, not immediately obtaining all his past medical records, not providing him the exact dose of medication recommended by the specialist, and not ensuring that the Lortab prescription would be refilled before it ran out. Sprinkle's complaint ignores or discounts the medical treatment Dr. Ali and Nurse Buschor provided during his brief stay at the jail: monitoring his blood pressure and treating it with medication; evaluating his symptoms of pain and providing non-narcotic pain medication; consulting his past medical records and treating physicians, placing him in the medical unit for closer observation after he claimed he had had a stroke, referring him to a kidney specialist, and providing the type of medication the specialist recommended. In the face of this treatment record, Sprinkle's allegation that the defendants did not treat his chronic pain cannot survive on summary judgment.

Moreover, Sprinkle offers no medical evidence to show that the defendants knew his condition necessitated different treatment than what they provided to him. Under § 1983, the court cannot second-guess Dr. Ali's medical judgment that Sprinkle's behavior at the jail was not consistent with a level of pain that required narcotic medications prescribed by his doctors in the past or, later, with the dosage of Lortab recommended by Dr. Ballinger. Indeed, Sprinkle's medical records from other facilities indicate that other treating physicians had questioned, as Dr. Ali did, whether Sprinkle's desire for narcotic pain medication might be drug-seeking behavior rather than a true medical need for such medication. The record establishes that Dr. Ali and

Nurse Buschor, throughout the time Sprinkle was in their care, evaluated his medical needs and provided him with treatment as they deemed appropriate for his symptoms at that time. Sprinkle's self-diagnosed need for different treatment is nothing more than an allegation of negligent diagnosis, which is not actionable under § 1983.[8] Estelle, 429 U.S. at 100-101; Wright, 766 F.2d at 849. For the reasons stated, the court concludes that defendants are entitled to summary judgment as a matter of law and grants their motions.

## 2. Captain Tuck

Supervisory officials may generally rely on the opinion of the medical staff as to the proper course of treatment and cannot be vicariously liable for constitutional violations committed by officials under their supervision. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990). To prove a supervisory official's liability, plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment decisions, or tacitly authorized or was indifferent to the prison physicians' misconduct. Id. at 854.

Sprinkle frames his medical claims against "the defendants," a group that includes Captain Tuck. Yet, Sprinkle offers no evidence to contradict Captain Tuck's evidence that as an a jail administrator, she has no role in making decisions about inmates' medical care.[9] As such, she could rightfully rely on the medical staff's decisions regarding the medically appropriate course of treatment for Sprinkle's conditions. Sprinkle also does not allege, nor does the record reflect, that Captain Tuck interfered in any way with that course of treatment. Finding no

---

[8] To the extent that Sprinkle's allegations of negligent diagnosis and treatment might give rise to some claim under state law, such claims are not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c).

[9] Captain Tuck states that as part of her role in the Services Division of the jail's administration, she oversees the medical department.

11

material issue of fact in dispute on which Sprinkle could prove any claim that Captain Tuck acted with deliberate indifference to his serious medical needs, the court finds that this defendant is entitled to summary judgment as a matter of law, and will grant her motion.

### III. Conclusion

For the reasons stated, the court grants summary judgment on behalf of the defendants as to plaintiff's medical claims and grants their motions to dismiss as to his remaining claims. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of May, 2014.

                                                    Chief United States District Judge